Lonnie Ray HICKS *v.* STATE of Arkansas

CA CR 88-224                                773 S.W.2d 113

Court of Appeals of Arkansas
Division I
Opinion delivered June 28, 1989

*Michael Everett*, for appellant.

*Steve Clark*, Att'y Gen., by: *Olan W. Reeves*, Asst. Att'y Gen., for appellee.

MELVIN MAYFIELD, Judge. Appellant Lonnie Ray Hicks was charged with possession of a controlled substance with intent to deliver after a search of the premises of his home at which officers discovered an ice chest which contained eight Ziploc bags of marijuana. He was convicted only of possession of a controlled substance, sentenced to six months in the county jail, and a $1,000.00 fine.

The search was conducted pursuant to a search warrant obtained by Roger L. Perry, a narcotics investigator for the Arkansas State Police. The warrant was issued by the Marked Tree Municipal Judge and was based on the sworn affidavit of Officer Perry. The affidavit is a printed form with language inserted on blank lines (emphasis below) and reads as follows:

The undersigned, being duly sworn, deposes and says:

That he has reason to believe that residence of Lonnie Hicks described as a white wood frame house with tan brick trim, located [by] traveling 5.1 miles South on HWY 75 from it's intersection with HWY 63. Five to seven pounds of Marihuana located in sheds and drums located behind the house.

in POINSETT County, State of Arkansas, there is now being concealed certain property, namely MARIHUANA which is in violation of Arkansas [Statute] 82-2601

That the facts tending to establish the foregoing grounds for the issuance of a Search Warrant are as follows: Information from a reliable C.I., who has provided accurate information which resulted in Felony Drug convictions on at least ten occasions. C.I. has seen the above items within the past ten days, on this date C.I. pointed out the above residence to investigators who took photos of said residence.

s/ Roger L. Perry

Sworn to before me, and subscribed in my presence, 10-30-86.

s/ Burk Dabney
Municipal Judge

Officer Perry also gave Judge Dabney recorded, sworn testimony but the tape was mislaid, was not transcribed, and could not be found when this case was tried. The search warrant was issued and executed the same day the affidavit was made. The search was conducted by Officer Perry and other officers of the Arkansas State Police and Poinsett County Sheriff's Office.

Prior to trial appellant filed a motion to suppress the evidence obtained in the search. After hearing the evidence presented and the arguments of counsel, the trial judge said that before the decision in *United States* v. *Leon*, 468 U.S. 897 (1984), he would have, on the same evidence, granted the motion to suppress; however, based on *Leon* and the Arkansas Supreme Court's application of that case in *Jackson* v. *State*, 291 Ark. 98, 722 S.W.2d 831 (1987), the motion to suppress was denied.

Counsel for appellant then requested the court to compel the prosecution to divulge the name of the confidential informant. It was argued that this was necessary to enable the appellant to examine the good faith of the officer who obtained the search warrant. The motion was denied and appellant argues on appeal that the trial court erred in using the good faith rule of *Leon* to deny the motion to suppress and in denying the motion to disclose the name of the confidential informant.

We first consider, however, the appellee's argument that the search warrant was issued upon probable cause disclosed by the affidavit of Officer Perry. We think the appellee is correct in its argument. In *Watson* v. *State*, 291 Ark. 358, 724 S.W.2d 478 (1987), the court said:

> In *Illinois* v. *Gates*, 462 U.S. 213 (1983), the two-pronged test of *Aguilar* and *Spinelli* was replaced by a different test — "a practical, common sense decision," based on all the circumstances, including the veracity and basis for knowledge of persons supplying information. It is sufficient if "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Under *Gates* it is the duty of the reviewing court simply to insure that the magistrate issuing the warrant had a substantial basis for concluding that probable cause existed. We are satisfied those requirements were met in this case. *Jackson* v. *State*, 291 Ark. 98, 722 S.W.2d 831 (1987); *Toland* v. *State*, 285 Ark. 415, 688 S.W.2d 718 (1985).

291 Ark. at 363.

The appellant's reply brief states he "agrees that the measure of the validity of an affidavit is the 'totality of circum-

stances' test," but it is argued that the words typed on the blank lines of the form stating "C.I. has seen the above items within the past ten days" are simply not sufficient to constitute the "basis of probable cause." It is claimed that the words do not say *what* the *above items* are nor whether they refer to *what was seen* or the *quantity* of what was seen. Moreover, appellant asks, why is there no definite date stated but only the vague "within the past ten days."

We think the appellant reads the affidavit too critically. In *Illinois* v. *Gates*, 462 U.S. 213 (1983), the United States Supreme Court said:

> [P]erhaps the central teaching of our decisions bearing on the probable-cause standard is that it is a "practical, nontechnical conception." *Brinegar* v. *United States*, 338 US 160, 176, 93 L Ed 1879, 69 S Ct 1302 (1949). "In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.*, at 175, 93 L Ed 1879, 69 S Ct 1302. Our observation in *United States* v. *Cortez*, 449 US 411, 418, 66 L Ed 2d 621, 101 S Ct 690 (1981), regarding "particularized suspicion," is also applicable to the probable-cause standard:
>
> > "The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same — and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement."
>
> As these comments illustrate, probable cause is a fluid concept — turning on the assessment of probabilities in particular factual contexts —not readily, or even usefully, reduced to a neat set of legal rules. Informants' tips

doubtless come in many shapes and sizes from many different types of persons. As we said in *Adams* v. *Williams*, 407 US 143, 147, 32 L Ed 2d 612, 92 S Ct 1921 (1972): "Informants' tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability." Rigid legal rules are ill-suited to an area of such diversity. "One simple rule will not cover every situation." *Ibid.*

462 U.S. at 231-32. A practical, nontechnical reading of the affidavit in this case reveals that Officer Perry states that he has reason to believe there are "five to seven pounds of Marihuana located in sheds and drums" behind the house of Lonnie Hicks and now being concealed there in violation of the law. The affidavit also states that a reliable informant (appellant's brief states that the reliability of the informant "is not the subject" of his argument) has seen the above items (obviously referring to the "five to seven pounds of Marihuana") within the past ten days. In *Watson* v. *State, supra,* the affidavit stated an informant had seen the marijuana "within the last two days." 291 Ark. at 362. In *Moore* v. *State,* 297 Ark. 296, 761 S.W.2d 894 (1988), the affidavit stated an informant told the affiant that the informant "had recently" observed marijuana in the appellant's residence. The affidavits were found sufficient in both of those cases. We think the affidavit was sufficient in the present case. Although the trial judge indicated he would not have upheld the validity of the affidavits in this case except on the basis of the *United States* v. *Leon, supra,* case, we affirm the court if it is correct even though the court states the wrong reason for its ruling. *Dandridge* v. *State,* 292 Ark. 40, 727 S.W.2d 851 (1987); *Marchant* v. *State,* 286 Ark. 24, 688 S.W.2d 744 (1985).

However, even if the affidavit was deficient, we would still sustain the trial court's decision on its stated finding of good faith by the police officer who conducted the search. In *Jackson* v. *State, supra,* the court said that *United States* v. *Leon* holds that objective good faith reliance by a police officer on a facially valid search warrant will avoid the application of the exclusionary rule in the event the magistrate's assessment of probable cause is found to be in error. It is true, as we stated in *Partin* v. *State,* 22 Ark. App. 171, 737 S.W.2d 461 (1987), that the Court in *Leon* also said that while great deference should be given to the

determination of the magistrate who issued the warrant, this deference is not boundless and does not preclude the inquiry into a knowing or reckless falsity contained in an affidavit for the issuance of a search warrant. We also cited *Franks* v. *Delaware*, 438 U.S. 154 (1978), where the Court said there must be specific allegations and a preliminary showing of perjury or reckless disregard for the truth and these allegations must be established by a preponderance of the evidence.

■ In the present case, there is nothing in the record to suggest that Officer Perry perjured himself in the affidavit or showed a reckless disregard for the truth. He repeated what he had told the judge in an effort to obtain the search warrant and stated to the court that it was true. In no way did counsel for appellant call into question at the suppression hearing the truthfulness of Perry's testimony. However, the appellant argues that the trial court erred in placing on him the burden of proving the lack of good faith of the police officer who made the affidavit. The Arkansas Supreme Court held in *Schneider* v. *State*, 269 Ark. 245, 599 S.W.2d 730 (1980), that the burden of showing the invalidity of a warrant and its supporting documents is upon the party moving to suppress the evidence obtained by execution of the warrant. 269 Ark. at 251. *Schneider* also cited *Franks* v. *Delaware*, *supra*, for the same holding we referred to in *Partin* v. *State*, *supra*. *See also, Beed* v. *State*, 271 Ark. 526, 534, 609 S.W.2d 898 (1980) (relying on the holding of *Schneider*).

The appellant also argues that the trial court erred in refusing to order the prosecution to disclose the identity of the confidential informant. He suggests that because of the *Leon* decision, Rule 17.5(b) of the Arkansas Rules of Criminal Procedure, which protects the name of the confidential inform- ant, cannot be upheld. That Rule provides:

> INFORMANTS. Disclosure shall not be required of an informant's identity where his identity is a prosecution secret and a failure to disclose will not infringe upon the constitutional rights of the defendant.

In *Jackson* v. *State*, 283 Ark. 301, 675 S.W.2d 820 (1984), the Arkansas Supreme Court discussed the question of when the identity of an informant must be disclosed.

   Appellant also contends the trial court should have ordered disclosure of the confidential informant's identity. In this case the charges did not include the actual delivery of a controlled substance, only the possession with intent to deliver. In *Bennett* v. *State*, 252 Ark. 128, 477 S.W.2d 497 (1972), we required disclosure when the defendant was charged with the sale of drugs and the informant actually participated in the crime. We have not required disclosure where a defendant was charged only with possession and the informant merely supplied information leading to the issuance of a search warrant.

283 Ark. at 303 (citations omitted). But appellant argues that without knowing the identity of the confidential informant, so he could interrogate him, defense counsel has no way of showing that the officer gave untruthful testimony in order to obtain the search warrant.

  ■ In the recent case of *Moore* v. *State, supra,* the Arkansas Supreme Court again held that where "there is no evidence that the informant participated in the crime, was a witness to the crime, or possessed any exculpatory information, failure to identify the informant is not in any way prejudicial to the appellant's defense." 297 Ark. at 308. In *Moore*, the court also said the facts "clearly come within the 'good faith' exception announced in *United States* v. *Leon.*" While the same argument made in the present case was apparently not made in *Moore*, nevertheless, it is difficult to see any justification for forcing the prosecution to disclose the confidential informant's identity in the present case, especially in view of our firm and well established rule against such action.

  In *Roviaro* v. *United States*, 353 U.S. 53 (1957), the United States Supreme Court stated:

   What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law. *Scher* v. *United States*, 305 U.S. 251, 254; *In re Quarles and Butler*, 158 U.S. 532; *Vogel* v. *Gruaz*, 110 U.S. 311, 316. The purpose of the privilege is the further-ance and protection of the public interest in effective law

enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.

. . . .

. . . Where the disclosure of an informer's identity, or the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way . . . .

. . . .

We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders non-disclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

353 U.S. at 59-62.

■ By balancing the public interest against the mere possibility that disclosure of the identity of the informant in this case would help appellant's defense, we find, after considering all the circumstances, that the trial court did not err in denying appellant's request for disclosure or in denying cross-examination designed to accomplish the same result.

Affirmed.

CRACRAFT and ROGERS, JJ. agree.